(38 Misc. Rep. 260.)

### YUENGLING v. BETZ.

(Supreme Court, Special Term, New York County. June, 1902.)

1. TRUST—EVIDENCE TO ESTABLISH—ACCOUNTING.

A woman owning second mortgage bonds of a corporation, containing a clause allowing the holders of three-fourths of the bonds to determine whether such mortgage should be foreclosed on default, put the bonds in the hands of defendant,—the corporation becoming embarrassed,—without any agreement on the matter. Defendant had promised to assist her husband, the principal stockholder, in the purchase of enough bonds to control the foreclosure, and carry them for a number of years, and then turn them over to her husband on payment of the price thereof and interest. Held to create a fiduciary relation between the parties, and where the defendant thereafter procures the second mortgage to be foreclosed, and also a prior mortgage on the realty, and buys the property in, paying for the same in part by the bonds which he had obtained from the woman, and becomes sole owner, he must account for the value of so much of the property as was bought by her bonds, which by the foreclosure he had rendered worthless.

Action by Catherine M. Yuengling against John F. Betz. Interlocutory judgment for plaintiff.

Kellogg & Beckwith, for plaintiff.
James C. McEachen (Abraham I. Elkus, of counsel), for defendant.

SCOTT, J. The plaintiff is the wife of David G. Yuengling, who was in 1894 the principal stockholder of the D. G. Yuengling Brewing Company, a corporation organized under the laws of this state. This corporation owned considerable real and personal property,

which was incumbered by two mortgages; the first affecting the real estate only, and the second covering both real and personal estate, given to secure bonds which had been issued to the amount of $900,000, out of an authorized issue of $1,000,000. The plaintiff was the owner of second mortgage bonds of the par value of $71,600. The brewing company having become financially embarrassed, plaintiff's husband, with her knowledge, appealed to defendant, his uncle, to come to his relief. Defendant and plaintiff's husband thereupon entered into an agreement whereby the defendant agreed to purchase sufficient of the second mortgage bonds to control the foreclosure thereof. These bonds the defendant promised to carry for a number of years, and to turn them over to plaintiff's husband at any time upon payment of the cost of acquisition and interest. The second mortgage bonds contained a somewhat unusual clause, whereby the holders of three-fourths thereof could modify and change the contract between the mortgagor and the bondholders to a very considerable extent, and, among other things, could determine whether or not the mortgage should be foreclosed for default in payment of interest, or could agree to a change in the rate of interest, or to a postponement of the time of payment thereof. The defendant, in addition to agreeing to purchase bonds, insisted that the plaintiff should hand over to him all the bonds she owned. There does not appear to have been any agreement between plaintiff and defendant respecting the terms upon which the bonds were to be held by defendant. There certainly is no evidence that plaintiff either sold or gave her bonds to him. Indeed, she was very reluctant to part with them at all, and only did so after the defendant had repeatedly sent peremptory messages insisting that they be handed over to him. There is evidence that the defendant caused it to be stated to plaintiff that he insisted upon possession of the bonds in order to be able to vote upon them when necessary. In view of the importance to the defendant of acquiring the control of a large block of the bonds, I am inclined to believe this evidence, and am quite convinced that in delivering her bonds to defendant the plaintiff understood that she was merely depositing them with him in order to strengthen his position, but without any intention of transferring the title thereto to him. The scheme to preserve the brewery property, which at first contemplated only the acquisition of second mortgage bonds, finally developed so as to involve the acquisition by the defendant of the property itself. This was effected by a foreclosure of the two mortgages, and the purchase by the defendant, upon the foreclosure sales, of all the real and personal property of the brewery company. The plaintiff's husband was fully cognizant of defendant's intention of acquiring the property, and actively co-operated in the various steps taken. It does not appear that the plaintiff was advised of defendant's intention to acquire the property, or consulted with reference thereto. At least some of the plaintiff's bonds were used by the defendant in purchasing the property, and were turned in as part of the purchase price. It is quite clear to me that the plaintiff never parted with the ownership of the bonds, and that in delivering them to the defendant she did

so merely in order to put him in a position whereby he could prevent or control the foreclosure of the second mortgage; and this, I am convinced, was the defendant's understanding of the transaction. In holding her bonds and dealing with them, he bore to her a fiduciary relation. She undoubtedly retained the right to the bonds or their value. If the sale of the property had not intervened, the plaintiff might have obtained full relief in an action at law. That is, however, impossible, under existing conditions, and the conditions which render it impossible are of the defendant's own creating. He has by his own act transferred his ownership of the bonds into an ownership of the property itself. The mortgage which secured the bonds has been foreclosed and wiped out, and the bonds, as bonds, have become valueless. To award the bonds to the plaintiff would be to give her so many pieces of blank paper. Having thus rendered it impossible that the plaintiff should obtain specific relief, the defendant must in some way account to her for the property which she intrusted to him. The defendant acquired the property through his control of the second mortgage bonds which he held, some of which had become his by purchase, and some of which had been intrusted to him by plaintiff. She is, I think, entitled to share with him ,in the property acquired in part by the use of her bonds, and her interest therein should be in the proportion which her bonds bear to the whole number of second mortgage bonds owned by the defendant. The second mortgage was a subordinate lien to the prior mortgage, which covered the real estate only. What the plaintiff is entitled to share in is the value of the brewery property, less the amount of the first mortgage lien. This amount is to be measured, not by the sum which defendant bid for the property at the sale under foreclosure of the first mortgage, but by the amount for which the property was directed to be sold by the judgment of foreclosure. The practical effect of the foreclosure of the second mortgage was to vest the defendant with title to the property itself, in place and stead of his ownership of the bonds. The value of the property in which the plaintiff is entitled to share is therefore the value of the brewery property as it was on the date of the sale under the second mortgage, less the ,amount of the judgment on the foreclosure of the first mortgage, with interest to the date of the second sale. Of this value, the plaintiff is entitled to recover from defendant that proportion which $71,600 bears to the whole number of second mortgage bonds owned, held, or controlled by him at the date of the sale, with interest; and, for the sum so found to be due, the plaintiff is entitled to a lien upon the brewery property. An interlocutory judgment may therefore be entered declaring the plaintiff's rights or interest in the property, and directing a reference to ascertain the number of second mortgage bonds held, owned, or controlled by defendant at the date of the second sale, exclusive of plaintiff's bonds, the amount adjudged to be due upon the foreclosure of the first mortgage, and the value of the brewery property on the date of the sale under the second mortgage. Decision and judgment to be settled on notice.

Judgment accordingly.